IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TIM FLAHERTY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | NO. 3:26-cv-00358 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| BROCK PIERCE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is a "Motion for Temporary Restraining Order With Potential Conversion To Preliminary Injunction and Request for Appointment of Receiver" (Doc. No. 6, "Motion"), filed by Tim Flaherty, Aniello Zampella, Jake Flaherty, Paige Larkin, Stephan Ossello, and Robert Rawson (collectively, "Plaintiffs").[1] Via the Motion, Plaintiffs move pursuant to

---

[1] Subsequent to the filing of the Motion, Plaintiffs filed two notices of voluntary dismissal (Doc. Nos. 15, 16, "Notices"), purporting to provide notice of the "nonsuit" of the claims of Aniello Zampella and Stephan Ossello. The Court discerns that Plaintiffs intended to file these Notices pursuant to Rule 41(a)(1)(A)(i)—although Plaintiffs do not specify this. Nevertheless, filing a notice of dismissal (or in this case a notice of "nonsuit"—a concept that does not exist in federal court) as to a single party (rather than an entire action) is improper. The Sixth Circuit has indicated that dismissal of a party, rather than of an entire action, is more proper pursuant to Fed. R. Civ. P. 21 rather than Fed. R. Civ. P. 41. *AmSouth v. Dale*, 386 F.3d 763, 778 (6th Cir. 2004); *Sheet Metal Workers' Nat. Pension Fund Bd. of Trustees v. Courtad, Inc.*, No. 5:12-CV-2738, 2013 WL 3893556, at *4 (N.D. Ohio July 26, 2013) ("A plaintiff seeking to dismiss only one defendant from an action must move the Court to do so under Rule 21"). Put another way, dismissal under Rule 41(a)(1)(A)(i) is dismissal of an action, not dismissal of a single party.

Rule 21 provides that the Court may at any time, on motion or on its own, add or drop a party or claim. Other circuits disagree, but district courts in this circuit routinely apply Rule 21, rather than Rule 41, when dismissing fewer than all defendants or claims. *United States ex rel. Doe v. Preferred Care, Inc.*, 326 F.R.D. 462, 464 (E.D. Ky. 2018) (citing cases). This distinction between Rules 41 and 21 is not meaningless. *Id.* at 465. First, dropping less than the entirety of an action risks prejudice to the other parties. And, secondly, this is a federal court, where the rules matter. *Id.* In other words, "the procedural vehicle makes a difference." *EQT Gathering, LLC v. A Tract of Prop. Situated in Knott Cnty., Ky.*, No. CIV.A. 12-58-ART, 2012 WL 3644968, at *4 (E.D. Ky. Aug. 24, 2012). For these reasons, the Court will construe the Notices as motions under Rule 21 to drop a party plaintiff.

Federal Rule of Civil Procedure 65 and Local Rule 65.01 for entry of a temporary restraining order ("TRO") enjoining Defendants, Brock Pierce and Scott Walker, "from removing the Assets" from a "DNA" entity,[2] "exercising control over the Assets, or taking any other action to transfer or encumber the Assets during the pendency of this lawsuit[.]" (Doc. No. 6 at 1).[3] Also via the Motion, Plaintiffs request a hearing—in the event that their requested TRO is granted—so that the Court may consider converting that TRO into "a preliminary injunction and/or the Court may appoint an independent receiver or special master pursuant to Federal Rule of Civil Procedure 66 with authority to take custody of the Assets, conduct an accounting, and report to the Court within fourteen days of appointment." (Doc. No. 6-1 at ¶ 36).[4]

Given the Court's construal of the Notices as motions, the Court will forgo determining herein whether those motions, should be given effect (presumably in the form of granting those motions) and will defer issuing an order as to those motions (i.e., Notices) to a later date. Accordingly, the Court will also continue to refer to all of Tim Flaherty, Aniello Zampella, Jake Flaherty, Paige Larkin, Stephan Ossello, and Robert Rawson collectively as "Plaintiffs," and to all six Plaintiffs as having filed any filings filed by any single plaintiff or combination of Plaintiffs herein.

[2] As will be explained below, the failure of Plaintiffs to clarify which of several (existent or non-existent) "DNA" entities—namely DNA Holdings Venture, Inc., DNA Holdings Venture, LLC, or DNA Venture Holdings, LLC—are involved in this action (and are implicated by the Motion) is fatal to the Motion.

[3] "Assets" are defined in Plaintiffs' complaint (Doc. No. 1, "Complaint") as assets worth some $100 million that Defendants contributed to one of the DNA entities listed above. (Doc. No. 1 at ¶¶ 1, 46). The Assets are comprised of "digital currency and blockchain fund membership interests." (Doc. No. 6-1 at ¶ 25).

[4] As noted above, Plaintiffs move the Court for a TRO pursuant to Federal Rule of Civil Procedure 65. (Doc. No. 6 at 1). Notably, however, where Fed. R. Civ. P. 65 refers to TROs, it refers only to TROs issued "without written or oral notice to the adverse party," Fed. R. Civ. P. 65(b)(1), which the Court in this footnote will call an "ex parte" TRO (since "ex parte" means "on one side only; by or for one party; done for, in behalf of, or on the application of one party only." Black's Law Dict. (6th ed. 1990) p. 76.). Rule 65 prescribes rules for the issuance and duration of an ex parte TRO. It does not mention, let alone set any rules for, TROs that are not ex parte; to the extent that temporary injunctive relief that is not issued ex parte is properly called a TRO, such a TRO is simply not within the scope of Rule 65. When the Motion was first filed, Plaintiffs did not provide Defendants with notice of the Motion. (Doc. No. 6 at 3). However, since the filing of the Motion, the Court ordered Plaintiffs to give notice to Defendants of the Motion (Doc. No. 8), counsel for Defendants have appeared (Doc. Nos. 9-10), and Defendants have filed a response (Doc. No. 12) in opposition to the Motion, meaning that Defendants now have notice of the Motion. In theory, this would now mean that Plaintiffs' Motion is not an ex parte TRO as contemplated by Rule 65. Nevertheless, the Court will treat Plaintiffs' Motion as properly brought under Fed. R. Civ. P. 65 because,

In connection with the Motion, Plaintiffs have filed a memorandum (Doc. No. 6-1, "Memorandum"), and a proposed order (Doc. No. 6-5, "Proposed Order"). In support of the Motion, Plaintiffs have also filed another memorandum (Doc. No. 6-2, "*McLaughlin* Memorandum"), declarations (Doc. No. 6-3, "*McLaughlin* Declarations"), and exhibits (Doc. No. 6-4, "*McLaughlin* Exhibits"). The *McLaughlin* Memorandum, *McLaughlin* Declarations, and *McLaughlin* Exhibits were originally filed in a related action captioned *McLaughlin et al v. Pierce et al*, 3:26-cv-00303 (M.D. Tenn.) (hereinafter "*McLaughlin*")[5] in support of a motion in that action for a TRO (*McLaughlin* Doc. No. 9, "*McLaughlin* TRO Motion")—a motion that was subsequently denied (*McLaughlin* Doc. No. 16, "*McLaughlin* TRO Order"). Plaintiffs, who are suing derivatively on behalf of an entity they call DNA Holdings Venture, Inc., assert that absent their requested relief, "DNA" (although it is again unclear which DNA entity is meant here) "will

---

although the Court need not delve herein into how or why this is the case, parties and courts have been known to speak as if a motion can be one for a TRO within the scope of Rule 65 (and not a preliminary injunction, which is governed by other provisions of Rule 65) even if it is made with notice to the opposing party. *E.g., In re Reynolds*, No. 23-22086, 2023 WL 11853230, at *3 (Bankr. W.D. Tenn. Sept. 1, 2023) (A temporary restraining order is a temporary order entered in an action, often without notice . . . .").

[5] When referring to filings in *McLaughlin*, the Court will use the following citation format (for citations and for textual references, respectively): "*McLaughlin* Docket No. ___" or "(*McLaughlin* Doc. No. ___)".

The Court notes for context that the relief requested through the TRO sought via the instant Motion (an order preventing Defendants from removing the Assets from a DNA entity) is exactly the same relief requested via the *McLaughlin* TRO Motion—relief that the Court declined to grant in the *McLaughlin* TRO Order. But there is a distinction in how the two motions framed the request for relief. In the *McLaughlin* TRO Motion, relief was requested in terms of a prejudgment asset freeze of the Assets so that plaintiffs in *McLaughlin* would not be prevented from collecting on whatever judgment they were able to receive against defendants in *McLaughlin* (who are also the same individuals as the Defendants in the instant action). By contrast, Plaintiffs in this action, who are suing on behalf of DNA Holdings Venture, Inc., have framed their requested relief predominantly in terms of preventing the *bankruptcy of a DNA entity*. In other words, although the relief requested in the *McLaughlin* TRO Motion and the instant Motion may appear identical, the relief requested in this action purportedly goes towards a very different purpose. And, unlike a prejudgment asset freeze intended to secure a future legal judgment, courts regularly issue injunctive relief to prevent the bankruptcy of a business entity. *See e.g., Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995) ("impending loss or financial ruin of [] business constitutes irreparable injury."); *Loc. Spot, Inc. v. Cooper*, No. 3:20-CV-00421, 2020 WL 7554247, at *3 (M.D. Tenn. Dec. 21, 2020) ("The Supreme Court, however, has suggested that the threat of bankruptcy can meet the standard for granting interim relief.").

suffer immediate and irreparable harm by virtue of insolvency," given that the Assets will likely be withdrawn from this DNA entity as shown (according to Plaintiffs) "by the verified Complaint and the previously filed [*McLaughlin* Declarations], and Plaintiffs' Memorandum of Law in support of the Motion." (Doc. No. 6 at 1).

Defendants[6] have filed a response (Doc. No. 12, "Response") in opposition to the Motion. The Response is supported by the declaration of Defendant Scott Walker (Doc. No. 13-1) as well as various exhibits (Doc. Nos. 13-1 – 13-9). Plaintiffs have filed a reply (Doc. No. 17-1, "Reply") in support of the Motion, filing along with the Reply various exhibits (some of which are under seal). (Doc. Nos. 17-2 – 17-9, 19-1 – 19-6).

In addition to the Motion, two other motions are pending before the Court. First, in connection with their Reply—which is eleven pages in length—Plaintiffs have filed an "Unopposed Motion to Exceed Page Limits," (Doc. No. 17, "Page Motion"), therein requesting leave to exceed the five-page page limit for reply briefs prescribed by Local Rule 7.01(a)(4). Defendant Brock Pierce has also filed an "Unopposed Motion for Leave to File A Supplemental Declaration in Opposition to Motion for A Temporary Restraining Order" (Doc. No. 20, "Pierce Motion"), therein requesting leave to file a supplemental declaration of Defendant Brock Pierce. (Doc. No. 20-1).[7]

For the reasons described below, the Motion (Doc. No. 6) is **DENIED**, the Page Motion (Doc. No. 17) is **GRANTED**, and the Pierce Motion (Doc. No. 20) is **GRANTED**.

---

[6] DNA Holdings Venture, Inc. is also a nominal defendant in this action. However, when referring to "Defendants" herein, the Court is referring solely to Brock Pierce and Scott Walker.

[7] Although the Pierce Motion is titled in terms of being "unopposed," Plaintiffs filed an opposition (Doc. No. 21) to the Pierce Motion the day after the filing of the Pierce Motion.

<u>BACKGROUND</u>

As an initial matter, the Court notes that the Page Motion (Doc. No. 17) and the Pierce Motion (Doc. No. 20), being well-taken, are **GRANTED**. Plaintiffs are accordingly granted leave to file their eleven-page long Reply—meaning that the Court will consider for present purposes the entirety of that Reply—and Defendant Brock Pierce is granted leave to file the supplemental declaration of Brock Pierce (Doc. No. 20-1)—meaning that the Court for present purposes has reviewed that declaration (as appropriate) in considering the instant Motion.[8]

Turning to the Motion, Plaintiffs brought this action by filing their Complaint (Doc. No. 1) on March 26, 2026. Plaintiffs bring their claims on behalf of an entity they call DNA Holdings Venture, Inc., although as will be made clear below, it is entirely *unclear* to the Court which of the myriad DNA entities named in the papers filed in connection with this Motion and action—namely DNA Holdings Venture, Inc., DNA Holdings Venture, LLC, or DNA Venture Holdings, LLC (hereinafter, each individually a "DNA entity" and two or more collectively "DNA entities")—are actually implicated by Plaintiffs' Motion. This action arises in large part (though not entirely) out of a dispute over cryptocurrency ("crypto") investments and other types of investments (namely in the form of the Assets) made into one or more of the three DNA entities listed just above (although as mentioned above, it is unclear to the Court *which* of these DNA entities are implicated).

---

[8] To the extent that Plaintiffs might object to the Court considering the supplemental declaration of Brock Pierce herein, the Court can assure Plaintiffs that the substance of that declaration does not ultimately impact the Court's decision on the Motion either way.

As shown by the Proposed Order, Plaintiffs seek via the Motion an order restraining "DNA"[9] and Defendants "from removing the Assets from DNA, exercising control over the Assets, or taking any other action to transfer or encumber the Assets." (Doc. No. 6-5 at 8). Also via the Motion, Plaintiffs request a hearing—if their requested TRO is granted—so that the Court may consider converting that TRO into "a preliminary injunction and/or the Court may appoint an independent receiver or special master pursuant to Federal Rule of Civil Procedure 66 with authority to take custody of the Assets, conduct an accounting, and report to the Court within fourteen days of appointment." (Doc. No. 6-1 at ¶ 36). As noted above, Plaintiffs assert that absent their requested injunctive relief "DNA"—again it is unclear *which* DNA entity—"will suffer

---

[9] Plaintiffs do not specify which DNA entity they refer to here. The Court also notes that the Proposed Order requesting the restraint of a DNA entity is curious given that Plaintiffs' briefing on the Motion indicates that they wish to restrain solely *Defendants* (and not any DNA entity) from interfering with the Assets. (Doc. No. 6 at 1; Doc. No. 6-1 at ¶ 36).

Crucially, and as will be discussed below, after the filing of the Motion but prior to the filing of the Response and Reply, the Court issued an order (Doc. No. 8, "Briefing Order") directing Plaintiffs to give notice to Defendants of the Motion, this action, and the Briefing Order, Defendants to file a response to the Motion by March 30, 2026, and Plaintiffs to file a Reply by March 31, 2026. In the Briefing Order, the Court explicitly noted that it was unclear which of the DNA entities were implicated by Plaintiffs' Motion, stating in relevant part:

> The Motion (and, in some places, the memorandum in support of the Motion) refer to DNA Holdings Venture, LLC, but in one place, (Doc. No. 6-1 at 1), the memorandum in support of the Motion refers to DNA Venture Holdings, LLC. Naturally, this alone causes the Court to question whether it is clear what "DNA" entity or entities are implicated in this lawsuit. But there's more: Plaintiffs are suing on behalf of DNA Holdings Venture, Inc., (as opposed to LLC), which makes the Court wonder why reference is made elsewhere to DNA Holdings Venture, LLC. The Court could speculate that what it has identified here amounts to two scrivener's errors and that Plaintiffs intended to seek an order restraining the transfer of the Assets from DNA Holdings Venture, Inc. But the Court is loath to engage in such speculation. Ultimately, the need to sort out what DNA entity or entities are implicated here is another reason why the Court is very hesitant to order relief here without first hearing from Defendants.

(Doc. No. 8 at 1 n.1). Despite this clear signal of the need for clarity—not just generally, but rather specifically *in order to grant the kind of extraordinary relief Plaintiffs are now requesting*—Plaintiffs (and Defendants, though this is less surprising) did not provide clarity on which of the DNA entities were implicated by the instant Motion (or this action overall).

immediate and irreparable harm by virtue of insolvency," given that supposedly the Assets will

likely be withdrawn from this DNA entity as shown (according to Plaintiffs) "by the verified

Complaint and the previously filed [*McLaughlin* Declarations], and Plaintiffs' Memorandum of

Law in support of the Motion." (Doc. No. 6 at 1).

<u>LEGAL STANDARD</u>

Those seeking a TRO must meet four requirements.[10] They must show a likelihood of

success on the merits; irreparable harm in the absence of the injunction; the balance of equities

---

[10] Published Sixth Circuit case law stands unmistakably for the proposition that these four items are factors rather than requirements, except that irreparable harm is a requirement (and, if it exists and thus keeps the possibility of a TRO alive, thereafter becomes a factor to be balanced along with the other three factors). *See, e.g., D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019). Alas, this case law is inconsistent with other (including more recent) Sixth Circuit case law and with Supreme Court cases (including *Winter*) that describe these as all being requirements (i.e., things that *must* be established. *See, e.g., id.* at 328, 329 (Nabaldian, J., concurring) (noting that "[*Winter*]'s language seems clear—a plaintiff *must* establish the factors" and questioning "whether the balancing analysis itself aligns with *Winter.*").

Notably, other courts have likewise treated the four items as requirements (prerequisites), rather than as factors. *E.g., Southern Poverty Law Ctr. V. United States Dep't Homeland Sec.*, Civil Action No. 18-760 (CKK), 2020 WL 3265533, *10 (D.D.C. June 17, 2020); *Transatlantic, LLC v. Humana, Inc.*, 8:13–CV–1925–T–17TBM, 2013 WL 3958361, *1 (M.D. Fla. Aug. 1, 2013).

The Court believes that it needs to choose between the two approaches—even if the substance or the outcome of the Motion does not turn on such choice—because the approach does dictate how a court goes about explaining its analysis and decision on a motion for preliminary injunction. And the Court believes that it should follow the latter line of cases, i.e., those that treat the standard as involving requirements rather than factors.

First, explaining and applying the standard in terms of requirements is substantially more straightforward than the alternative—which is to explain that the four items are factors to be balanced, except that, well, that's only partially true because actually irreparable harm *is* a requirement (but also, if it exists, *then* a factor to be balanced along with the other factors) and likelihood of success (at least to some minimal extent) is also required. *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) ("Thus, although the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory."); *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (noting that it is reversible error for a district court to issue a preliminary injunction "where there is simply no likelihood of success on the merits (quoting *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010))). Second, it is easier to articulate a conclusion as to whether requirements are satisfied (which is done in simple yes/no, or satisfied/unsatisfied, terms) than to articulate the outcome of some so-called "balancing" of (mismatched) factors. This is especially true given that case-specific balancing apparently is based in part on some inscrutable sliding scale of required likelihood of success on the merits that depends on the strength of the other three factors. *See, e.g., In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985) ("[T]he degree of likelihood of success required may depend on the strength of the other factors.").

favors them; and that the public interest favors an injunction. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Sisters for Life, Inc. v. Louisville-Jefferson County*, 56 F.4th 400, 403 (6th Cir. 2022).

It is often stated that a district court has discretion to grant or deny TROs. *See, e.g., Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). If that is the case, then it follows that the district court must have the discretion to grant or deny a TRO even if the movant has shown (by satisfaction of the four requirements) that it is at least *eligible* for a TRO.[11] *See Doe v. Rausch*, No. 3:24-CV-01403, 2025 WL 57711, at *4 (M.D. Tenn. Jan. 9, 2025).

The Court's conclusion that it has the discretion to deny a TRO even if the movant has shown it is eligible for a TRO is buttressed by caselaw from federal circuit courts (although not as yet the Sixth Circuit), as well as numerous other district courts. *See e.g., RJ's Int'l Trading, LLC v. Crown Castle S., LLC*, No. 23-10453, 2024 WL 1509156, at *2 (11th Cir. Apr. 8, 2024) ("Even in those cases where the requirements of a permanent injunction have been met, a court maintains broad discretion to deny permanent injunctive relief."); *Bethesda Softworks, L.L.C. v. Interplay Ent. Corp.*, 452 F. App'x 351, 353 (4th Cir. 2011) ("'whether to grant the injunction still remains in the 'equitable discretion' of the [district] court' even when a plaintiff has made the requisite showing." (quoting *Christopher Phelps & Assocs., LLC v. Galloway,* 492 F.3d 532, 543 (4th Cir. 2007))); *Franciscan All, Inc. v. Burwell*, 227 F. Supp.3d 660, 677 (N.D. Tex. 2016) (finding that even when the movant satisfies the four preliminary injunction factors, "the decision whether to grant or deny a preliminary injunction remains discretionary with the district court."). *See also*

---

[11] This is because the district court obviously has no discretion to grant a TRO when the requirements for a TRO are *not* all satisfied; otherwise, those requirements would not actually be requirements at all. So the only context in which a district court could possibly have discretion when it comes to issuing or declining to issue a TRO is the context where the movant has satisfied all the requirements for a TRO.

*Winter*, 555 U.S. at 32 ("An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course.").

<u>DISCUSSION</u>

Assuming *arguendo* that Plaintiffs have met the four requirements discussed above such as to be eligible for a TRO, *Winter*, 555 U.S. at 20, the Court in its discretion nevertheless denies Plaintiff's requested TRO. *See e.g., RJ's Int'l Trading*, 2024 WL 1509156, at *2.[12] This is because, as noted above, the Court is entirely unclear as to which of the DNA entities that the parties discuss—namely DNA Holdings Venture, Inc., DNA Holdings Venture, LLC, or DNA Venture Holdings, LLC—are actually implicated by Plaintiffs' Motion and this lawsuit. Put another way, in light of the briefing on the Motion, the Court is unsure (and the parties *likewise* seem unsure): (i) which (if any) of the DNA entities Plaintiffs seek to restrain via the Motion; (ii) in which of the DNA entities Defendants would be restrained from interfering with the at-issue Assets if the Court were to grant the Motion; (iii) which of the DNA entities is currently in possession of the at-issue Assets; or indeed (iv) which of the DNA entities is even implicated at a threshold level by the Motion and this lawsuit. Put another way, the lack of specificity prompts the Court in its discretion to deny the Motion. *See e.g., Holmseth v. Goddard*, No. 2:23-CV-11, 2023 WL 5828592, at *2 n.4 (E.D. Tenn. June 29, 2023) ("A movant requesting a TRO must request what specific conduct the Court is being requested to enjoin." (citing *Berg v. Knox Cnty., Tennessee*, No. 3:20-CV-00019-DCLC, 2020 WL 7078374 (E.D. Tenn. Sept. 28, 2020))), *report and recommendation adopted in part, rejected in part on other grounds*, No. 223CV00011DCLCCRW, 2023 WL 5500838 (E.D. Tenn. Aug. 25, 2023); *Bozin v. Deloitte Consulting LLP*, No. 1:20 CV 1191, 2020 WL 4597260, at *3 (N.D. Ohio June 4, 2020) ("In order to obtain relief under Rule 65, an injunction or restraining

---

[12] That is not to say that the Court would actually find that Plaintiffs had satisfied all four requirements if it were to analyze the requirements.

order must 'state its terms specifically' and 'describe in reasonable detail . . . the act or acts to be restrained or required.'" (quoting Fed. R. Civ. P. 65(d))).

To illustrate this problem, the Court will review the parties' filings in this action. As noted above, via the Complaint Plaintiffs bring their claims on behalf of an entity they call DNA Holdings Venture, Inc. (Doc. No. 1).[13] In the Complaint, Plaintiffs first define the term "DNA" to mean DNA Holdings Venture, Inc., (*id.* at ¶¶ 1, 10), and indicate, at least at points, that the at-issue Assets are in the possession of "DNA," seemingly meaning *DNA Holdings Venture, Inc.* (*Id.* at ¶ 1). However, later in the Complaint Plaintiffs seem to refine the term "DNA" to mean *both* DNA Holdings Venture, Inc. and an entity called DNA Venture Holdings, LLC, collectively, (*id.* at ¶ 21, ¶ 21, n.1),[14] which suggests that the at-issue Assets are perhaps in the possession of *both* DNA Holdings Venture, Inc. and an entity called DNA Venture Holdings, LLC. This alone is confusing, but on its own it would not necessarily preclude the Court granting Plaintiffs' requested relief. However, in Plaintiffs' papers filed in connection with the Motion, the confusion deepens.

In the Motion itself, Plaintiffs define the term "DNA" to mean solely *DNA Holdings Venture, LLC*, (Doc. No. 6 at 1), and frame their requested relief in terms of preventing Defendants (and solely Defendants) from interfering with the Assets of "DNA," a framing which seems to indicate that the Assets are currently held in the possession of *DNA Holdings Venture, LLC*. (*Id.*).

---

[13] It is also somewhat unclear whether Plaintiffs are bringing their claims on behalf of DNA Holdings *Venture*, Inc. or DNA Holdings *Ventures*, Inc. (Doc. No. 1 at ¶¶10, 21, 149, 163; Doc. No. 6-1 at ¶ 36). The Court, following the caption of the action provided by the ECF docketing system as well as what the Complaint itself states in its own caption, will assume that Plaintiffs are bringing their claims on behalf of DNA Holdings *Venture*, Inc., even though the Court is not at all sure of the exact name of the corporate entity that Plaintiffs bring their claims on behalf of.

[14] In the paragraph and footnote the Court has cited here, Plaintiffs actually refer to DNA Holdings *Ventures*, Inc. (and indeed elsewhere in the Complaint Plaintiffs refer to DNA Holdings *Ventures,* Inc.) and DNA *Ventures* Holdings, LLC. The Court assumes that Plaintiffs mean to refer to DNA Holdings *Venture*, Inc. and an entity called DNA *Venture* Holdings, LLC, although the Court cannot be sure of this given the prevailing confusion here at issue.

The confusion does not end there. In the Memorandum, Plaintiffs next define the term "DNA" to mean *DNA Venture Holdings, LLC* (rather than *DNA Holdings Venture, LLC*), (Doc. No. 6-1 at ¶ 1), and again frame their requested relief in terms of preventing Defendants (and solely Defendants) from interfering with the Assets of "DNA," which now (according to the Memorandum) would seem to be in the possession of *DNA Venture Holdings, LLC*. (*Id.* at ¶ 36). To make matters worse, Plaintiffs then indicate in their Proposed Order that they seek *also* to restrain "DNA" *and* Defendants (rather than restraining *solely* Defendants as indicated by the Motion and Memorandum) from interfering with the Assets of "DNA." (Doc. No. 6-5 at 8). Yet, in the Proposed Order Plaintiffs do not even attempt define the term "DNA" or to tell the Court what they mean by the term "DNA." In other words, the Proposed Order would have the Court restrain an unidentified DNA entity (in addition to Defendants) from interfering with the Assets seemingly in the possession of an unidentified DNA entity.

In short, based on these filings, the Court is (and was) entirely unsure which (if any) DNA entities Plaintiffs seek to restrain via the Motion, in which DNA entities Defendants would be restrained from interfering with the at-issue Assets if the Court were to grant the Motion, which DNA entity is currently even in possession of the at-issue Assets, and indeed which of the DNA entities are even implicated by this lawsuit.[15]

But it gets worse for Plaintiffs. After reviewing the Complaint, the Motion, the Memorandum, and the Proposed Order, the Court put Plaintiffs on notice of this confusion in the Briefing Order (Doc. No. 8), which is discussed in a footnote above. In the Briefing Order, the

---

[15] This also raises serious doubts as to Plaintiffs' showing of irreparable harm with respect to the Motion, given that the Court cannot say with any confidence which of the DNA entities will be (potentially) facing insolvency, or indeed whether Plaintiffs would be able to assert that the insolvency of one of the aforementioned DNA LLCs would constitute irreparable harm for Plaintiffs (who are suing on behalf of DNA Holdings Venture, Inc.).

Court directed: (i) Plaintiffs to provide Defendants with notice of this lawsuit, the Briefing Order and the Motion; (ii) Defendants to file a response to the Motion by March 30, 2026; and (iii) Plaintiffs to file a reply by March 31, 2026. Crucially, in the Briefing Order, the Court explicitly noted that it was unclear which of the DNA entities were implicated by Plaintiffs' Motion and lawsuit, in relevant part providing:

> The Motion (and, in some places, the memorandum in support of the Motion) refer to DNA Holdings Venture, LLC, but in one place, (Doc. No. 6-1 at 1), the memorandum in support of the Motion refers to DNA Venture Holdings, LLC. Naturally, this alone causes the Court to question whether it is clear what "DNA" entity or entities are implicated in this lawsuit. But there's more: Plaintiffs are suing on behalf of DNA Holdings Venture, Inc., (as opposed to LLC), which makes the Court wonder why reference is made elsewhere to DNA Holdings Venture, LLC. The Court could speculate that what it has identified here amounts to two scrivener's errors and that Plaintiffs intended to seek an order restraining the transfer of the Assets from DNA Holdings Venture, Inc. But the Court is loath to engage in such speculation. Ultimately, the need to sort out what DNA entity or entities are implicated here is another reason why the Court is very hesitant to order relief here without first hearing from Defendants.

(Doc. No. 8 at 1 n.1). Despite this clear telegraphing of the need for clarity, Plaintiffs (and, for that matter Defendants, although Defendants have more of an excuse since they are not the ones seeking extraordinary relief) failed to provide clarity on which of the DNA entities were implicated by the instant Motion. In their Response to the Motion as to the DNA entities discussed herein, Defendants did refer solely to DNA Holdings Venture, Inc., and did define the term "DNA" to mean DNA Holdings Venture, Inc., (Doc. No. 12 at 3), but this (despite having the virtue of consistency) does not do anything proactive to actually clarify the confusion facing the Court. And for their part, Plaintiffs inexplicably provide *no* clarity in their Reply as to which of the DNA entities are implicated by the Motion and this lawsuit, instead referring simply to "DNA" throughout the Reply, without even defining the term.

This will not do. If the Court were to grant the Motion and issue Plaintiffs' requested injunctive relief, it would be unclear to the Court, the parties, and third parties exactly what conduct the Court was restraining and even what entities were being restrained. Such confusion would fly against fundamental precepts undergirding the issuance of injunctive relief under Rule 65. *See e.g., Holmseth*, 2023 WL 5828592, at *2 n.4 ("A movant requesting a TRO must request what specific conduct the Court is being requested to enjoin."); *Bozin*, 2020 WL 4597260, at *3 ("In order to obtain relief under Rule 65, an injunction or restraining order must 'state its terms specifically' and 'describe in reasonable detail...the act or acts to be restrained or required.'" (quoting Fed. R. Civ. P. 65(d))). Therefore, the Court will not issue Plaintiffs' requested injunctive relief.[16]

---

[16] In theory, the Court might be able to resolve the instant morass regarding the identities of the DNA entities by delving into the voluminous filings made in connection with the instant Motion. The Court declines to undertake such a course of action and declines to, in effect, do Plaintiffs' work for them; it is especially incumbent for parties to do such work on its own where, as here, they are seeking extraordinary relief.

CONCLUSION[17]

Accordingly, and for the reasons described herein, the Motion (Doc. No. 6) is **DENIED** in its entirety.[18] Additionally, and for the reasons stated above, the Page Motion (Doc. No. 17) and the Pierce Motion (Doc. No. 20) are each **GRANTED**.

IT IS SO ORDERED.

---

[17] The Court would be remiss if it did not make a few additional points. First, between this action and the related *McLaughlin* action, the instant Motion is the third request for emergency injunctive relief that has been filed. This is also the third such request for emergency injunctive relief that has been denied. Addressing emergency motions, such as the instant Motion in this action and the other two motions for emergency injunctive relief filed in *McLaughlin*, requires a substantial expenditure of limited judicial resources, and requires the Court to put other (much older) pending motions on the metaphorical backburner. Parties should consider strongly whether, in filing a request for emergency injunctive relief, such request is truly justified and indeed truly an "emergency" requiring a court's immediate attention.

Second, to the extent that parties, like Plaintiffs, wish to file motions—any motions—it would behoove them to make clear to courts the exact contours of the relief they request, and the exact contours of the dispute underlying the request for such relief. This guidance is especially true when considering motions for "emergency" injunctive relief, given the expedited nature of a court's decision as to such relief.

Finally, the Court also notes that even if it were not denying the Motion on the grounds explained herein, the Court has serious doubts about whether it would otherwise be able to grant Plaintiffs' requested injunctive relief. As an initial matter, in each of the requests for emergency injunctive relief filed in this action and the *McLaughlin* action, the movant (being the parties in the role of plaintiffs in both actions) asserted that absent their requested relief they (or a DNA entity) will suffer irreparable harm, either in the form of the insolvency of the DNA entity, or in the form of plaintiffs being unable to collect on a judgment. Given that this is the third such request for injunctive relief that the Court is now denying, and as far as the Court can see the asserted irreparable harm has not yet occurred, the Court has serious doubts about whether the asserted irreparable harm as it relates to this Motion (or the previous motions) is actually *imminent and likely* to occur as required for injunctive relief to issue. Additionally, based on the briefing on the Motions, the Court also has serious doubts about whether it is able to exercise personal jurisdiction over Defendants—and if the Court cannot (or likely cannot) exercise personal jurisdiction over Defendants, this lack of personal jurisdiction would necessarily preclude the issuance of injunctive relief.

For all of these reasons, the parties in this action (and for that matter the parties in the related *McLaughlin* action) are encouraged to think once, think twice, and then think again before burdening this Court's busy docket with a *fourth* motion for emergency injunctive relief. Before doing so, they should assure themselves that they have all of their metaphorical ducks in a row, starting with avoiding the missteps that have occurred so far and been highlighted by the Court.

[18] Given that the Court is denying Plaintiffs' requested TRO, the Court also denies Plaintiffs' request for a hearing to consider converting that TRO to a preliminary injunction and to otherwise consider appointing a receiver. To the extent that Plaintiffs intended to frame their request for a receiver in terms independent of their request for injunctive relief—i.e., to the extent Plaintiffs conceived of their request for a receiver as not being dependent on their requested injunctive relief being issued—Plaintiffs' request for a receiver fails for effectively the same reason that Plaintiffs' request for injunctive relief fails: namely that the Court is entirely unsure which of the DNA entities for which the Court would be appointing a receiver.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE